The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning. The first case for argument this morning is 19-2214, PI Advanced Materials v. Kaneka Corporation. Mr. Dane, whenever you're ready. Thank you, Chief Judge. Good morning, Your Honors, and may it please the Court Summary judgment in this case on the issue of importation was inappropriate because... Mr. Dane? Yes. This is Judge Wallach. I have a few questions about the law and the concepts regarding hearsay evidence, okay? Yes. On page one of the blue brief, you say that Mr. Tsuji's testimony is not inadmissible hearsay because, I'm quoting you, it is clear from Mr. Tsuji's testimony that Kaneka's knowledge regarding SKPI's sole provider status was not gleaned from one conversation, but, close quote, but from, quote, Kaneka's day-to-day business activities, okay? Now, on page 19-506 of the Joint Appendix, Mr. Tsuji testified that, quote, the response from Inox was that, according to Samsung, the only qualified source for the films, the two films at issue there, was SKPI, but that he did not remember to whom he had spoken and could not point to a specific document to support. And, of course, those specifically are foundational issues as well as relying on the testimony of someone else. Is Mr. Tsuji's testimony based on anything other than what other people told him about SKPI's supply chain? That's my first question. Yes, and that is taken out of context on a single question where SKPI's counsel was asking about whether he was aware of any other documents, any documents that he had, and he said he recalled a conversation. But there was other testimony where Mr. Tsuji was discussing his general knowledge of the market, and that was similar to— Stop speaking, counsel. Where in the blue brief or in the gray brief did you discuss that? If I can give you the appendix numbers where we— or references where he said his— I'm sorry? That's not what I asked you. Where in the blue brief or the gray brief did you discuss that? And I apologize. I have the appendix numbers. I don't have the references in the blue brief or the gray brief. I'll look for those and discuss. You better have them when you use your five minutes or whatever you have left. I will, Your Honor. I will, Your Honor. This is Judge Proust. I'm sorry, Judge Wall, if you finish your questions, then I'll go out. Thank you. Have you argued that any hearsay exception applies? I've argued that it's not inadmissible hearsay, so yes. And that was my point that I was saying earlier, that this is general business knowledge that a sales director would learn in the course of their business from talking to various customers. Counsel, listen up. Are you arguing a business records exception to the hearsay rule? No. No. I'm sorry. The answer is no. If you do want me to continue, just please let me know. Yes, go ahead. If you're not arguing a business records exception, how is this not an out-of-court statement offered to prove the truth of the matter asserted? Because it's as in the previous case and where this court found in Rule 36 this was appropriate, if personal knowledge acquired through perceptions based on industry experience is sufficient foundation for lay opinion testimony, most knowledge has its roots in hearsay. That's Burlington v. Nebraska, Robinson v. Watts Detective Agency, which we cited in the briefs, AGFA v. Gabert, where a businessman's assessments are inferential as long as they are the sort of inferences that businessmen customarily draw that they count as personal knowledge. So it's not inadmissible hearsay. Otherwise, a sales director can't learn without speaking with his customers. And I should say that is just one mere piece of evidence. That is not even the totality of the evidence that we have of importation. Can I just follow up to Judge Wallach's question, which is we're in the papers. There were a lot of submissions filed. There were a couple of hearings, back and forth, filings. Where in your papers did you make this particular argument that you raised in gray and it blew at 41, that it constitutes the businessman's exception, relying on Mr. Tsuji's testimony at 19-506? If you look at it, that's why I was going to give the appendix sources, if I could, Your Honor. The appendix at 19-506, which is at page 350, lines 4 through 20. I'm talking about the papers that you filed, the arguments you made, the responses you made to the concerns raised by SKPI and the district court that this is Mr. Tsuji's testimony with hearsay. At pages 41 and 42 of the opening brief, Your Honor. No, no, no. I'm not talking about what you argued to us. I'm talking about what you argued to the district court. Your Honor, and again, then I'll have to bring that up, if I can, in the five minutes for rebuttal, so I can locate for that specific question. Going through the record myself, I couldn't find anything other than perhaps the response to fact number 69 of KSPI, which is at 17-301-302 of the record, and I don't think that does it. I could not find, I mean, you cite these cases regarding hearsay, et cetera. I couldn't find any cases that you cited making that argument to the district court. So, yes, if you could come up with citations, because I can't find any, that would be helpful. Okay, thank you, Your Honor. This is Judge Bryson. Picking up on the point that I think you were making just before Judge Prost questioned you, you say there was other evidence of importation other than Mr. Tsuji's testimony. Now, focusing specifically on the 12.5-micron film that was used for Coverlay in the OLED display devices, what proof did you offer other than Mr. Tsuji's testimony that SKPI was the only supplier of film to SMC? SKPI's own assessment in January of 2016 that it had 90-95% of the market, that it had supplied to its customers assurances that its film that it had been supplying would be transitioned specifically from the old nomenclature to the new nomenclature, and that in terms of, for instance, the J-Series consultation card, that it was referencing specifically GF 12.5 film, which SKPI acknowledged the same supply chain and that that J-Series film was sold in the United States. I can give you the appendix numbers that the court would like for all of that. What is the appendix number for the 90-95% market? The reason I ask is I want to make sure that that pertains to the specific goods that I was referring to, the 12.5-micron film used for Coverlay. It pertains, and by the way, it pertains to all the film, but it's appendix 17-581. What volume is it? That's two, right? That's in volume two, I believe. And by the way, the song deposition also at appendix 18-128 is where he admits that the OLED display is made by Samsung, that the 12.5-micron SKPI film is used in that Coverlay. That's appendix 19-482. That gets to the relationship between SMC and the ultimate phone makers downstream. It doesn't address, the song, I don't believe, addresses the question of whether SKPI is providing all the film for SMC. Yes, Your Honor, you are, and that's why the reference to appendix 17-581, which is the January 2016 reference that 90 to 95% of the Korean FTC market was dominated by SKPI. So just the sheer numbers put this in the category. That's why it's beyond Largen or even O2 micro in terms of the evidence. And then if I could... Also... Yeah, sorry. This is Judge Grost. But with respect to the two films for which you claim SKPI is the exclusive provider, that's what you're claiming in your briefing here, right? Yes, that's one of the pieces, yes. Because the Korean film market is a duopoly and Conecuh isn't certified. So SKPI must be the exclusive provider. That's the argument you're making, right? Well, more directly... Well, I'm reading from your brief. Am I misreading your brief? I thought that was the argument you were making. No, no, no, that is the argument. SKPI, Conecuh knows it's not certified. SKPI is 95% of the market. So if you take that with also the knowledge of Suji, if the court is going to accept it, then that is yes, then it must be SKPI. But at least it's 5% to 10% at a maximum could be anyone else. Where in your papers below did you make the argument in the context of showing that SKPI is exclusivity for these two films? Your Honor, if you're asking for specific sites in the briefing, again, I'll have to give you the specific briefing sites. I have all the appendix sites, but I'll have to do that in five minutes. Well, the problem I'm having is I'm sure you would agree that whatever, what arguably persuasive arguments you make to us now, if we're talking mainly about the two films, it's not fair game unless those arguments were also presented to the district court and he rejected them, right? You would disagree that those arguments, the arguments you're making to me should have and must have been made to the district court below, right? Correct. Okay. So let me ask you. So this is at page 11, which is appendix 17-263. Kanika further cited evidence that its film is not certified for use as cover lay in the OLED devices. I'm so sorry. I know we're rushing you. Can you give me that slide again? Okay. Hold on. 17-263. Okay. And that's where we say that SKPI is the exclusive supplier for the OLED devices, the 12.5 micron, the 25 micron. And your honors, again, when we talk about the forest for the trees taking each piece in isolation, if you start, and I promise I'll do this very quickly, but if you start with the timeline of November 19th, 2015, the jury reaches a verdict of 10 million square meters of infringing film being imported. Within less than two months, SKPI is alleging that it's going to add a line. It's going to change its nomenclature. It's improving its film, but our technical expert found the new film infringes as the old one does, and this patent is on a film, not on a process for a film. They offer immediately to indemnify Inox, and they tell the customers that you're at risk of violating the jury verdict if you don't transition to the new film, which could only happen if there's importation. They offer a quality guarantee. I can give you all the sites for that, that it has equivalent fiscal properties, same level of appearance. The DJ complaint they filed on the 961 is saying they designed around, and so both the design around and the DJ complaint both indicate that this is only about technical infringement, not some change in the market. The Washington State testing, there's no reason to request testing if there isn't in fact an importation of your product, and there's no reason for you to respond by testing that there's importation of the product, and that during the three-quarters of a year, they were overlapping, supplying both the old nomenclature and the new nomenclature, so a rose by any other name is still an infringing product. The new film infringes, the old film infringes, so it's the same film. You can call it a new product, and in the Japanese complaint, its latest 2018, they finally admitted, because it benefited them, that they were selling infringing product that was coming into the United States. All of that raises a question of fact and should have been considered in total, not in isolation picking apart each piece of evidence. If my colleagues have nothing further, I think I heard your bell go off, so we'll save the remainder of your time for rebuttal. Thank you. Thank you. Thank you. Ms. Swayze, is it Swayze? Am I pronouncing it correctly? It's actually Swayze, not intuitive. Okay, thank you. Please proceed. Thank you, Your Honor. May it please the Court. As the Court just recognized, Conaca had the opportunity for full discovery. It engaged with the District Court in multiple rounds of briefing. It had two hearings, and it had multiple roadmaps on how to present an importation case, including this Court's decision in Larigan and the prior case between these two parties. But Conaca offered the District Court, just like it does on appeal, imagination and speculation and overstates the evidence. The District Court properly granted summary judgment, and I'd like to start where the Court started, which is Conaca's purported exclusive supplier theory, which is unsupported. The only evidence that we are purportedly an exclusive supplier for these two particular accused films is the inadmissible hearsay from Mr. Tsuji. The District Court properly and well within its discretion disregarded that. He is testifying based on information he had from others. Mr. Dane referenced different sources, but that is... Well, isn't there some portion of his... I'm sorry to interrupt. This is Judge Crow. Isn't there some portion of his testimony that arguably could have been based not on information for others, but just on the nature of his position and his own experience at the company? And if that's correct, why would that be problematic as hearsay? Let me see if I can address that in three points, Your Honor. So, first of all, it's a circular argument because Conaca would just be relying on Mr. Tsuji's say-so that someone in his position would have this knowledge. There's no corroboration. And if this is the kind of information that would be common knowledge in this industry, there would be something in the record or something that Conaca could easily develop. The particular fact here that Conaca is relying on for Mr. Tsuji is the exclusivity of another company for another company, not anywhere involving Conaca. A couple of tiers down in this complex supply chain from Conaca. That is classic hearsay. The second reason I would offer is that this is a new argument. You can look in the summary judgment briefing, the hearing transcripts. There is no argument by Conaca to the district court that Mr. Tsuji was somehow offering testimony about industry knowledge or common knowledge. It's something that Conaca came up with on appeal. And I would point the court in particular to Appendix 20058. That's the Conaca supplemental brief that Judge Guilford allowed Conaca to file after the first hearing. It never addresses the court's hearsay concern, which the court raised not only at the hearing but also... I'm sorry, it may not have come up at the hearing, but it raised in the detailed comprehensive tentative order that Conaca had the benefit of before that first hearing. There's nothing addressing the court's concern. What Mr. Dane may be pointing to is that Conaca recited these general sources that Mr. Tsuji said he was relying on. So he named some companies like Inox and Hanwha. But they never argued that he was somehow offering common knowledge. Again, at the hearing, at the second hearing in June, as Judge Guilford pointed out in his final summary judgment opinion, Conaca, again, never tried to rehabilitate Mr. Tsuji as having offered anything such as industry or common knowledge. And I also want to point out my third and final point here, because we didn't have the opportunity to address this. This was a piece of Mr. Tsuji's testimony that Conaca relies on in its reply brief. And, in fact, it's front and centre of this argument. It's the beginning of Conaca's argument on this exclusive supplier theory at reply 20 to 21 and 25. This is another example of Conaca attempting to repurpose evidence that isn't probative or relevant. Conaca cites Mr. Tsuji's testimony in volume 1 of the appendix at appendix 5254 to 5298 as purported support that this kind of information, again, information about another company's exclusive supplier status. That testimony was never presented to Judge Guilford. You can tell by the docket header at the top. It's from several months before the summary judgment proceedings and about 70 docket entries before. It also concerned a different topic. It was specifically asking about Conaca's information about its films. It wasn't talking about some general acquired business information. And, again, we just return to the point that it's Mr. Tsuji's say-so. There is no other proof the district court properly recognized that Mr. Tsuji's third-hand information could not support this theory and that's what this theory entirely rests on. I will offer, just for the Court's comfort, one final point on this theory from Conaca. For very good reasons, Judge Guilford disregarded it, but even if you accept everything in the appendix from Mr. Tsuji, Mr. Tsuji doesn't connect this purported exclusive supplier status to the accused films in this case. As the Court recognized, this theory pertains to two specific accused films, GF50, which has a 12.5-micron thickness, and GF100, which has a 25-micron thickness. The Court can look at Appendix 18340, which is at the beginning of Volume 2, and also 18343. Those are schedules from Conaca's witness, Mr. Knapper. They recount numerous non-accused films of those same thicknesses that we sell. There is nothing in Mr. Tsuji's testimony that connects this purported theory to the two accused films that Conaca raises. Let me ask you a question. Ms. Tsuji, I'm sorry, this is Judge Bryson. Mr. Dane cited, in response to one of my questions, the document that appears at 17-577, Sales Team Report. I'd like your comment on that document, but I'd also like to ask whether that document was cited to the District Court in the responses, either the initial response to your motion for summary judgment or in the supplemental response. Yes, Your Honor, that document was submitted. It is a document... It was submitted, but was it cited in the materials that were submitted to the District Judge in opposition to the summary judgment motion? Because I don't remember seeing it. It may have been there, but this is Docket 293-13, and that is a document I don't remember seeing. Let's see. I believe it was cited. Judge Bryson, are you asking if it was cited? I'm sorry, if you don't mind repeating. In the original briefing or in the supplemental briefing? Either. Let's see. It was submitted in some portion of the proceedings, I believe. Okay. Well, we can find that, I guess. But go ahead. On the merits of that document, could you comment? That document identifies that we have customers, two particular customers that Conaca is relying on. It's just the first tier of the supply chain. To the extent Conaca is relying on $17,581, about a purported share, that's in 2015. This case involves products that were not even made or sold until 2016, so that is not probative besides the fact that it's incomplete because this is a complex, multi-country set of manufacturers. We are by far from the only manufacturer, and this doesn't have any information tracing any product, certainly not these two accused products of this theory or any theory. As Judge Guilford recognized, Conaca is trying to hang its hat on the evidence that was presented in the prior case. That's old evidence. It's not relevant here, and nothing connects that evidence to the current set of facts, a very different set of facts. We have different accused films. We have different time periods. It doesn't overlap with the evidentiary period in the prior case. Notably, and this is something that kind of glides over, the end product makers here are a different set of manufacturers than in the prior case. This case accuses Apple and Samsung of directly importing cell phones. There's nothing to leverage from any prior time period with respect to Apple's supply chain. Apple phones were not involved in the prior case. I'm sorry. You can go ahead and finish your comment. I was just going to note that a relevant percentage for Samsung is that the vast majority of Samsung sells its phones outside the United States, and that's why just as in Larigan, market tracing analysis is so important. Let me ask you two other very specific questions. First, what is your response to their reliance on the Japanese complaint? Yes, Your Honor, the Japanese complaint on its face concerns the prior case. At Section 7 of the complaint, you'll see that it defines the subject matter. We were suing over equipment that was used in relation to the prior case. Okay. The reason I ask is Mr. Dane, I think, referred to the Japanese complaint and said that it pertained to 2018. You're saying that, well, whatever happened in 2018, the subject matter of the complaint is earlier? Yes. You can also look at it. That's correct. At Attachment 2 to the complaint, it identifies the products that were involved in that case. In addition to defining the subject of that complaint being the prior case that was before Judge Bernal, Attachment 2 identifies the films that were at issue in the Japanese complaint, and those are all old films. They don't identify any of the GF or GV films that are accused in this case. Okay. One other question dealing with the specific facts before us. There is reliance at several points in the district court on the document that appears at 17597, which is a complex chart prepared apparently by Mitsui and Company.  I found it very difficult to try to understand what it indicated. I have to confess I'm with you, Judge Bryson. A couple of responses. It is undated. We have no idea what this information might even be reflecting. Second, this is a document that was created by Mitsui. This relates to something that Judge Guilford fully recognized, in that Conaca didn't attempt to develop any evidence from any suppliers in this market, and so whether from Mitsui or from the participants in this market, there's just a complete black hole. In Largin, the court faced this where there was no evidence about how the Steps 2 or Step 3 operated. We have the same situation here. It's not clear that this chart is even relevant to the time period, but the one other point I can offer Judge Bryson is that you'll see at the top, it's defining the Korea market supply chain. Whatever period that might be, that's an incomplete picture. There were other polyamide filmmakers. You can find that at Appendix 14856. Another example of that is the Hanwha website that Conaca relies on, and you'll find that at 16489. There are also numerous entities at each level of the supply chain. In this kind of complex market, that's where it's so important to actually trace the film, and Judge Guilford recognized that Conaca didn't even do that. We don't know the reason. Certainly, it's a sophisticated party. It was in prior litigation on this exact same legal issue, but it chose not to develop any evidence from any of the other companies in this supply chain. We have no insights into how the films might travel. We don't control the entities that are downstream of us, and that was something that Conaca certainly bore the burden on. There is no evidence to support that even any single film enters the United States, and Judge Guilford reached the proper conclusion. Okay. I think I heard the bell. Did I hear the bell, Patrick? We still have a minute left. Okay. I apologize. Please proceed if you have any further comments. I'm happy to rest there, Your Honor. I'm certainly happy to answer any questions. Let me ask another question, then, since I am focused on specific documents here that that's what cases like this turn on. There is an exhibit which is cited several times in Conaca's papers, exhibit number 50, an email. I could not locate with confidence where that was in the appendix, and perhaps I should ask Mr. Dane, but if you happen to know. I was looking at 18454, but it doesn't seem to square up with the description of the email in the statements of Undisputed Fact and elsewhere. Do you happen to know where that is? Exhibit 50? It's cited as exhibit 50. When it appears. Okay. Let me see, Your Honor. Is there an appendix page you're looking at for the citation? Yeah. Hold on. Let me see if I can find one of the several appendix sites. One of them is, for example, 17332. If you look at the second box on that, it also appears in the third box. So I just thought maybe it was 18454, but that doesn't look like it fits. So I can answer your question. Exhibit 50 is a document that was produced in the prior case. You can tell by the stamping, it's a date stamp from the old case. Okay. Do you have an appendix site for that? What I'm looking at is CONICA's list of exhibits that it submitted in support of its opposition to summary judgment, and that was not in the appendix. I can ask Mr. Dane. He may well be in a position to tell us. So thank you. Thank you, Your Honor. Thank you. If the court has no further questions, we would ask the court to affirm. Thank you. Thank you very much. Mr. Dane, you've got some time left on rebuttal. Thank you, Your Honors, and I just want to make sure I answer the earlier questions from the court. So I mentioned that in the opening brief, pages 41 and 42, specifically there was a question regarding where in the brief the testimony was, and it relates to Suji, but down below, if you look at appendix 17301 at paragraph 69, we describe what Suji's knowledge was based on. We argued as the exclusive supplier at 17259 and 17263, so I wanted to make sure I got the sites. I wanted to address a couple of points. Samsung is the key in both the cases because Samsung supplies the OLED modules to Apple as well. It supplies the OLED modules to itself and other end users, including Apple. So Samsung is a key throughout this, so it's not different end users. That relates to damages. In the earlier case, the finding by the court was that it was a class of infringers. The problem is for damages, we can only determine a certain amount. The reason we can't get middlemen is very simple. While Korea is a Hague Convention signator, it does not sign on to Article 23, which relates to pretrial discovery, so it will not allow its businesses to be compelled to produce documents or testify. So you have to go through this other route, which is why you have to trace the closed market. The 90 to 95% was definitely argued below, and if you look at Appendix 17255 at page 3, we stated SKPI continues to dominate the Korean P.I. film market by its own estimation, had a roughly 90 to 95% share of that market by 2016, and it was in our supplement statement of facts as well. Where in the supplemental statement of facts is it? It's at 8, numbers 8 and 11. Okay, thank you. And, Your Honors, the point, the reason past this prologue is you started November 19, 2015 when we know they're importing, so they don't start from zero. Their claim is it's a new product, but if technically they're still infringing the 961, the new product is still an infringing film as the old product, and all the pieces of evidence I cited, if you take them together, show a transition from an old nomenclature to a new nomenclature. They can claim it's a new film, but that's a genuine issue of material fact. But from November 19, 2015 through the end of 2016, they are consistently conveying, and these are through circumstantial evidence, the testing, the indemnification, the assurances, that the market will continue through that supply chain, through Samsung, this time to Samsung and Apple, but there is a continuation. Just imagine if you take it to the extreme, if on November 20, the day after the verdict, SKPI had argued it redesigned its film, would Canica have to reinvent the wheel and say, now I've got to prove wholly a new supply chain, irrespective of the fact that a day before, we know that they had dominated the market and they were supplying infringing film into the United States. This is at a summary judgment stage where we need to show a genuine issue of material fact. Each of these pieces in isolation do, irrespective of Mr. Tsuji's testimony, each of these other pieces at least provide a reasonable inference that a jury should be allowed to hear that the importation continued. Mr. Dane, let me ask this question. If this case were to go to trial, how would you endeavor to prove the element of importation that existed prior to this case? That is to say, in the facts relating to the previous case. Is your argument that the judgment in the first case is collateral estoppel in this case? Or what would your argument be? Well, first of all, Your Honor, you're absolutely right. It is collateral estoppel, but this is the reason the 2018 Japanese complaint was important. It wasn't important to show that they were admitting their new product is an infringing product. It was finally at admission after they had denied it through the entire prior trial that they knew their product was coming into the United States. They knew that 10 million meters were coming in. Markets don't change on a dime. So the very people who testified in the Japanese complaint of that would be the people that we would call in this case to show you knew then so you know now. That's why you're indemnifying. That's why you're testing for Washington State. We have a right to do that at trial as long as we raise a genuine issue of material fact at summary judgment. We're not at the stage like O2 Micro where we're already past trial. We have a lot of avenues open, but at least a genuine issue of material fact has been raised if you take the forest and not each individual tree and try to pick it apart. I mean a jury should be allowed to say you're transitioning to new nomenclature. If you look at appendix 16199, it's focused on really a change in nomenclature saying it's a new improved design, but the film still infringes by our technical expert. They're just saying we're going to change to a simpler nomenclature. So why shouldn't the jury hear and raise a reasonable inference that the new allegedly new film is the old film. It's just called something different. We have a right to present that information to a jury along with calling the witnesses that admitted that they knew that the old nomenclature was infringing and being imported. Okay. I think we have your argument. Could I ask a couple of questions just again about specific documents because I found the joint appendix to be difficult to use to try to figure out where everything was and some of the things I just wasn't able to find. I mentioned in Ms. Sweezy's argument Exhibit 50. Mr. Dane, is that anywhere in the joint appendix? Again, I couldn't find it, but it may be there somewhere. It absolutely is, Your Honor, and I think that was the one. Exhibit 50 is appendix, you're right, it's 18454. The reason I was confused is because it is listed in the docket sheet as docket 291-56, which doesn't appear in the joint appendix. I apologize. Well, I just am not as confident as you are, but if you say that that is the document that is Exhibit 50, then we'll accept that document at, what did we say? Your Honor, I think the issue may be there's a redacted portion that may be referenced at a different appendix number, and that's the one you may be referring to, and that was appendix, I'm sorry, I just lost it for a second. It was an appendix in the 15086. So that may have been the confusion. There's a redacted and unredacted. All right, I'll check that out. One other thing, you cite at several points Exhibit 180, and in particular that's identified as being pages 379-380 of Mr. Tsuji's testimony, and I've looked at what I think to be all of Mr. Tsuji's testimony, but I couldn't find those two pages. Are those anywhere in the appendix that you know of? You said Exhibit 180? Yeah. Hold on, it's right there. That is Appendix 16859. Let me just pull it up. 16859. And again, that's a redacted version. I can search and see if there's an unredacted. Well, those aren't the same pages. The 859, well, my copy of the appendix does not have a 16859. It has a 16858, and then after that you jump to 16921. And I'm sorry, Arnie, can I give you the unredacted and can you try Appendix 19505, and let me see of that. 19505. I showed that as the Exhibit 80 unredacted. Okay, well, that also is not, that's not the right page, because that's 389. I'm looking for 380 through 381. You'll notice, I'm sorry, 379 through 380, I think it is. Let's see. Yeah, the appendix, unfortunately. 379 through 380. So it looks like that's not in the appendix. Is that your understanding? No, I understand it to be the 379 is appendix. I'm going to give you, try this one, Appendix 19499. There is no Appendix 499 in my copy of the appendix, and I'm willing to bet that it's not in any of the other court copies of the appendix. All I can do then, Your Honor, is apologize for that. We show it as being in the appendix. I apologize if it's not. Do you have a copy of the appendix that was submitted to the court? Yeah, that's what I'm actually looking at. Are you looking at an appendix that has 19499 in it? I'm befuddled. Okay, well, I don't want to take any more time. I think probably what you should do is submit to us the various pages that appear not to, that we've discussed that appear not to be in the appendix that was filed with the court. Your Honor, we will submit that today. Yeah, I'm befuddled because I have a bound copy. I don't know how that could have been miscopied. I honestly don't. All right. But, of course, I'll honor that. Is there another, was there another page you referenced that you didn't believe? Let's see. Well, there's one other document, but it's not particularly important, so we'll leave it there. Okay. Anything further from my colleagues? Not from me. All right. Thank you. We thank both sides, and the case is submitted. Thank you, Your Honor.